UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN MICHAEL KESLING,<br><br>                    Plaintiff,<br><br>       v.<br><br>JOSH TEWALT; JAY CHRISTENSEN; CHAD PAGE; BOBBY MADDOX; CHRIS JOHNSON; VERNON GREENLAND; VERONICA DOE; TIMOTHY R. McKAY; DAVID DIETZ; DAGOBERTO MARTINEZ; RHONDA OWENS; KRISTINA WALDRAM; and CORIZON MEDICAL CORPORATION,<br><br>                    Defendants. | Case No. 1:20-cv-00334-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Shawn Michael Kesling's initial complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint. *See* Dkt. 6-1.

The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

## 1.     Screening Requirement

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 2.     Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at

678, 682 (internal quotation marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

**3.      Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center ("ISCC"). Plaintiff's claims involve the IDOC's response to the coronavirus pandemic.

In March 2020, "IDOC created an incident response team to confront the ongoing health crisis as the result of COVID-19." *Am. Compl.*, Dkt. 6-1, at 9. Defendants Josh Tewalt (Director of the IDOC) and Chad Page (Chief of Prisons) are members of this team. The team developed policies and communicated those policies to ISCC officials, including Defendants Christensen, McKay, Dietz, Greenland, Martinez, Owens and Waldram. COVID-19 policies were also communicated to Corizon, the private entity providing Idaho inmates with medical treatment under contract with the IDOC.

All inmates received a copy of a letter from Director Tewalt, acknowledging the risk of COVID-19. Early policies developed by the team included temperature checks and questionnaires given "to all persons entering ISCC." *Id*. at 10. Plaintiff complains that the questionnaires "were only as effective as the truthfulness of the answers by those completing them." *Id*. These early policies did not include requiring individuals to wear face masks.

Plaintiff claims that, at some point in April or May 2020, an ISCC staff member tested positive for COVID-19. The fact that a staff member was infected with COVID-19 was not immediately disclosed to inmates, and no additional steps were taken until June

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

24, 2020. *Id*. at 11. On that date, ISCC inmates were informed "of the first positive coronavirus case within the inmate population." *Id*. at 12. It appears it was not until this announcement that IDOC officials instituted a policy requiring face masks. *Id*. at 13.

Under direction from ISCC management and the incident response team, from June 26 to June 30, 2020, Corizon conducted mass testing of inmates who were deemed "potentially" or "presumptively" positive for the coronavirus. *Id*. at 13. It seems that inmates are considered presumptively positive if there is a "reasonable basis to suspect" they may be infected based on their "association with a confirmed case" of COVID-19. *Id*. Plaintiff's cellmate was one of these presumptively positive inmates and was tested for the virus.

After Plaintiff's cellmate was tested, Defendant Maddox did not isolate him by himself but instead placed him back into his previous cell, where Plaintiff and his cellmate were then quarantined. *Id*. at 13–14. Plaintiff states that this occurred throughout ISCC, "resulting in the close-quarters mixing of inmates presumed positive for COVID-19 and their corresponding cellmates." *Id*. at 14. Plaintiff alleges that this practice of returning inmates who were tested, but whose test results are pending, to their cells with their cellmates was a policy decision of IDOC officials. It is unknown whether Plaintiff's cellmate did, in fact, test positive for COVID-19 or, if he did, whether he has since been isolated.

ISCC inmates regularly have access to television. Plaintiff claims that certain channels that broadcast news regarding the pandemic were "disabled" until June 27,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

2020, purportedly in an attempt to keep inmates from hearing media reports of COVID-19. The channels were then active for 48 hours but were once again allegedly disabled on June 29. *Id*. at 12.

Plaintiff claims that the denial of access to television broadcasts was contrary to what Plaintiff describes as IDOC's "'You'll hear it from me first' campaign," in which officials promised inmates they would be kept informed, but then failed to so inform them: "This propaganda machine, among other things, was designed to control the optics and messaging of the circumstances surrounding COVID-19 to Plaintiff and those inmates incarcerated at ISCC under a false shroud of purported transparency." *Id*. at 15. IDOC officials' disabling of the television broadcasts allegedly "created a known and intentional barricade between Plaintiff and local media and allowed a false narrative to be disseminated throughout ISCC." *Id*. at 15–16.

Plaintiff sues various IDOC officials and ISCC staff members, Corizon, and two Corizon employees. Plaintiff asserts that Defendants have violated the First and Eighth Amendments to the United States Constitution.

Plaintiff has not alleged sufficient facts to proceed with the Amended Complaint. The Court will, however, grant Plaintiff 60 days to file a second amended complaint. Any second amended complaint should take into consideration the following.

## 4.    Discussion

### A.    *Standards of Law Governing § 1983 Claims*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the

Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury";

(3) failed to act or improperly acted in the training, supervision, or control of his

subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in

"conduct that showed a reckless or callous indifference to the rights of others." *Id*. at

1205–09.

To bring a § 1983 claim against a local governmental entity or a private entity

performing a government function, a plaintiff must allege that the execution of an official

policy or unofficial custom inflicted the injury of which the plaintiff complains, as

required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694

(1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012)

(applying *Monell* to private entities performing a government function). Under *Monell*,

the requisite elements of a § 1983 claim against a municipality or private entity

performing a government function are the following: (1) the plaintiff was deprived of a

constitutional right; (2) the entity had a policy or custom; (3) the policy or custom

amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or

custom was the moving force behind the constitutional violation. *Mabe v. San

Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a municipality or

private entity performing a state function "may be held liable under § 1983 when the

individual who committed the constitutional tort was an official with final policy-making

authority or such an official ratified a subordinate's unconstitutional decision or action

and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir.

2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

## B.    The Amended Complaint Fails to State a Plausible First Amendment Claim

Plaintiff claims that his First Amendment rights were violated when Defendants allegedly disabled access to news channels that were reporting on COVID-19. *Am. Compl.* at 15–16.

Prisoners have a First Amendment right to receive published materials, including news materials, subject to reasonable limitations. *See Pell v. Procunier,* 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison

regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). "But that right does not create an affirmative duty on prisons to provide news publications [or television news broadcasts] to inmates." *Collins v. Burl*, No. 2:11-CV-40-DPM-BD, 2011 WL 2457532, at *1 (E.D. Ark. June 17, 2011) (unpublished) (holding that inmate's claim failed as a matter of law where defendants did not themselves provide inmate with published "material or access to television news").

Further, there is no constitutional right to watch television in prison. *James v. Milwaukee* County, 956 F.2d 696, 699 (7th Cir. 1992) (denial of television does not constitute a cognizable civil rights claim); *Murphy v. Walker*, 51 F.3d 714, 718, n. 8 (7th Cir. 1995) (per curiam) (same); *Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir. 1988) (same); *Montana v. Commissioners Court*, 659 F.2d 19, 23 (5th Cir. 1981) ("The claims relating to the usage of radio and television were properly dismissed as frivolous. These claims do not pertain to federal constitutional rights."); *Manley v. Fordice*, 945 F. Supp. 132, 136-37 (D. Miss. 1996) ("[T]here is simply no right to television while incarcerated .... [S]uch items are *luxuries*, and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections."); *see also Rawls v. Sundquist*, 929 F. Supp. 284, 291 (M.D. Tenn. 1996), *aff'd*, 113 F.3d 1235 (6th Cir. 1997) (no equal protection violation where death row inmates were denied satellite television because the denial "is within the wide-ranging discretion granted to prison administrators and does not impinge the Inmate Plaintiffs' constitutional rights").

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

Therefore, Plaintiff's allegations that he was denied access to television news broadcasts about COVID-19 do not state a plausible civil rights claim under § 1983.

### C.  *The Amended Complaint Fails to State a Plausible Eighth Amendment Claim*

Plaintiff claims that Defendants have violated the Eighth Amendment in several ways: (1) by failing to require the "wearing of masks by anyone entering in, working in, or housed in ISCC" from March to June 2020; (2) by returning Plaintiff's cellmate to his cell, and failing to isolate him away from Plaintiff, while the cellmate's test results were pending; and (3) by instituting, overall, an inadequate COVID-19 response that created an unsafe environment. *Am. Compl*. at 16–19. Also, though Plaintiff does not clearly assert that his medical treatment has been constitutionally inadequate, his naming of Corizon as a Defendant signals that he may be intending to assert such a claim.

### i.  Conditions of Confinement: Failure to Require Face Masks, to Isolate Inmates Pending COVID-19 Test Results, or Overall to Develop an Adequate Response to the Pandemic

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. "[T]he Constitution does not mandate comfortable prisons, and prisons … [that] house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237,

1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Moreover, even prison officials or medical providers who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The Amended Complaint fails to state an Eighth Amendment claim upon which relief may be granted. Plaintiff's allegations reveal that prison officials responded reasonably to the serious risk posed by the coronavirus and, therefore, were not deliberately indifferent in violation of the Eighth Amendment.

IDOC instituted an incident response team to deal with the dangers posed by COVID-19. Prison officials have developed and instituted policies to attempt to curb the spread of COVID-19. The response has included temperature checks and questionnaires—which were also among the initial responses undertaken by individuals and businesses outside of prison.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

That prison officials did not require face masks for the first few months of the pandemic does not establish deliberate indifference. What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities. At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus. Of course, we now know that such masks do help reduce the risk of transmission. But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.[1]

The policy of returning presumptively positive inmates to their cells while awaiting test results, where they could potentially expose their cellmates, also appears to be a reasonable response to the current pandemic. Until such inmates receive their test results, it is unknown whether they are infected. The prison is a finite space. It would be impossible to isolate every inmate who is *potentially* infected—the prison does not have enough space to house each such inmate in a single cell. Plaintiff does not allege that prison officials did not isolate his cellmate after a positive COVID-19 test. Additionally, a cellmate who is presumptively positive and waiting on test results, if infected, has already exposed his cellmate to the virus. Therefore, it was a reasonable response to the risk of coronavirus to quarantine both inmates together while test results were pending, even if distancing between cellmates was not possible.

---

[1] There also might be other reasons that would make requiring face masks for all individuals in a prison impracticable or undesirable, such as the need to identify inmates or visitors quickly for purposes of safety and security. The Court expresses no opinion on such issues at this time.

IDOC and ISCC's response to the current pandemic—at least as described in the Amended Complaint—has, to this point, been reasonable. *See Farmer*, 511 U.S. at 844. Prison officials developed a team to deal with COVID-19 as it affects the prison population. That team has created and implemented policies in an effort to protect the health and safety of inmates during this crisis. They have undertaken reasonable measures, such as temperature checks, questionnaires, and testing of potentially positive inmates, which show that officials have indeed been taking the risk seriously and considering how best to respond. IDOC is not required to have a perfect response to the pandemic—only one that is free from deliberate indifference. Therefore, the Amended Complaint does not give rise to a reasonable inference that any Defendant has violated the Eighth Amendment with respect COVID-19.

ii.     Potential Claim of Inadequate Medical Treatment

Plaintiff does not provide any details about his medical treatment and, therefore, has not plausibly alleged that such treatment has been constitutionally inadequate. If Plaintiff intends to assert such a claim in a second amended complaint, he should consider the following legal standards.

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

*McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a

reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

5.      **Standards for Second Amended Complaint**

If Plaintiff chooses to further amend the Amended Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated;

(6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of a First or Eighth Amendment claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In addition, Plaintiff must include facts showing that Plaintiff can meet the *Monell* requirements if Plaintiff continues to name Corizon as a Defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint."

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's Amended Motion for Leave to Amend and to Review Amended Complaint (Dkt. 7) is GRANTED.

2.    Plaintiff's initial Motion for Leave to Amend and to Review Amended Complaint (Dkt. 6) is MOOT.

3.    The Amended Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the second amended complaint) a Motion to Review the Second Amended Complaint. If Plaintiff does not timely file a second amended complaint, this case may be dismissed without further notice. Alternatively,

Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[2]

4.      Because a second amended complaint is required for Plaintiff to proceed, Plaintiff's Motion to Appoint Counsel and Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (Dkts. 8 and 9) are DENIED without prejudice.

DATED: August 4, 2020

B. Lynn Winmill
U.S. District Court Judge

---

[2] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).